UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NANCY K. BUSS,<br><br>        Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security Administration,<br><br>        Respondent. | Case No. 1:17-cv-00047-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Currently pending before the Court is Nancy Buss's Petition for Review of the Respondent's denial of social security benefits, filed on January 31, 2017. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR). For the reasons that follow, the Courtwill affirm the decision of the Commissioner.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed a Title II application for a period of disability and disability insurance benefits, and also protectively filed a Title XVI application for supplemental security income, on September 11, 2013. These applications were denied initially and on reconsideration, and a hearing was held on August 12, 2015, before Administrative Law Judge (ALJ) Christopher Inama. After hearing testimony from Petitioner and a vocational expert, ALJ Inama issued a decision on October 14, 2015, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on December 5, 2016.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date of July 13, 2011, Petitioner was fifty-one years of age. Petitioner completed the eleventh grade, and her prior work experience includes work as a dispatcher and cleaner/housekeeper.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of July 13, 2011. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's cervical and lumbar degenerative

disc disease, with a history of cervical spine surgery, and migraine headaches severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for any listed impairment, specifically considering Petitioner's cervical and back impairment under Listing 1.04 (disorders of the spine). The ALJ determined Petitioner's impairments did not meet or equal the criteria for the listed impairment considered.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's functional capacity, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her pain are credible.

In formulating Petitioner's RFC, the ALJ considered Petitioner's activities of daily living, and the medical evidence of record. The ALJ found that, Petitioner's statements concerning the intensity, persistence and limiting effects of her pain were not entirely credible. Consequently, the ALJ found Petitioner retained the residual functional capacity to perform light work which included the ability to perform her past work as a dispatcher and cleaner/housekeeper, even after considering the following limitations: never climb ladders, ropes or scaffolds, occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to hazards and refrain from operating automotive equipment.

**MEMORANDUM DECISION AND ORDER - 3**

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ found Petitioner retained the ability to perform her past work, and therefore the ALJ did not proceed to step five. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where

**MEMORANDUM DECISION AND ORDER - 5**

the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the ALJ erred at step two, and at step four, by fashioning an RFC that was not supported by the evidence, and failing to provide clear and convincing reasons for finding Petitioner less than fully credible. Specifically, Petitioner asserts the ALJ erred by determining Petitioner's right L5 radiculopathy, mental disorder, and substance disorder were nonsevere impairments, and thereafter failed to include all of Petitioner's functional limitations in the RFC.

**1.    Severity**

Petitioner asserts the ALJ erred by finding her right L5 radiculopathy, mental disorder, and substance addition disorder were nonsevere impairments at step two. An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Webb*, 433 F.3d. at

**MEMORANDUM DECISION AND ORDER - 6**

687, citing Soc. Sec. R. 85–28. The Court must determine whether the ALJ had substantial evidence to find the medical evidence clearly established that Petitioner's L5 radiculopathy, mental disorder, and substance addition disorder nonnsevere.

Here, the ALJ examined Petitioner's EMG study results from May of 2015, which found no more than a mild, chronic, right L5 radiculopathy despite Petitioner's complaints of low back pain that radiated down through her right buttock and hip, and into her right foot. (AR 24, 714, 718.) Upon examination, Dr. Orme noted full strength in all four limbs with normal tone and bulk, normal reflexes, no sensory deficits in the lower limbs, and a normal gait. (AR 718.) While Dr. Orme noted Petitioner's symptoms were right side predominant, the physical exam was "notable for normal motor strength." (AR 719.)

Based upon Dr. Orme's examination, the ALJ concluded Petitioner's lower extremity symptoms were not severe. The Court finds substantial justification in Dr. Orme's treatment records for this conclusion. Further, the ALJ's credibility determination considered Petitioner's complaints of low back pain and lower extremity weakness, and found her complaints not credible. Accordingly, substantial evidence supports the ALJ's finding at step two with regard to Petitioner's complaints of low back pain.

The ALJ examined also Petitioner's treatment history for substance abuse, with limited mental health treatment for depression, noting her symptoms for each improved with counseling and medication. (AR 25.) The ALJ noted Petitioner had methadone treatment from 2010 to 2014, including group therapy, and showed leadership in group

settings. (AR 520 – 542; 634 – 640.) As for her mental health, Petitioner reported feeling depressed in 2010. (AR 25.) However, the ALJ noted that, at an office visit to her primary care provider on July 10, 2012, Petitioner's depression screen indicated moderately severe depression, but her scoring suggested her functionality was not impaired. (AR 435 – 436.) By October of 2012, as the ALJ noted, Petitioner's mood had improved, as the medical care provider who treated her at that time indicated Petitioner's mood and affect were normal. (AR 533.) On October 7, 2013, her mental health medication was changed to address her mood. (AR 323 – 324.) The ALJ noted that Petitioner's medical records showed improved mood throughout 2013, 2014, and 2015. (AR 25.)

Therefore, the ALJ concluded that neither Petitioner's substance abuse, nor her mental health impairment, reached the level of severity required for a finding at step two, because the objective medical evidence of record supported the conclusion that her symptoms caused no more than a minimal limitation upon her ability to perform basic work-related activities. Further, the ALJ noted that the opinions of the state agency psychological consultants were not of the opinion that Petitioner suffered from severe mental impairments. (AR 25; AR 76, 89, 106, 121.)

Based upon the Court's review of the record as a whole, the Court finds the ALJ's conclusions at step two were supported by substantial evidence in the record and there was no error.[2]

---

[2] The Court declines to address Respondent's argument that any error was harmless, because of

**2.     Credibility**

The ALJ found Petitioner's impairments could reasonably be expected to cause some of her alleged symptoms, but that her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (AR 26.) Petitioner argues the ALJ failed to provide clear and convincing reasons for finding the Petitioner's subjective complaints of pain not fully credible. (Pet. Mem. at 8, 15.)

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.* "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

First, the ALJ must determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If a claimant produces objective medical evidence of an underlying impairment, the ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) "Once the claimant produces medical evidence of an

---

its determination that the record supports the ALJ's finding at step two.

**MEMORANDUM DECISION AND ORDER - 9**

underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995).

Second, when Petitioner establishes medical evidence of an underlying impairment, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation including: considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and

**MEMORANDUM DECISION AND ORDER - 10**

third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ may also consider the location, duration and frequency of symptoms, factors that precipitate and aggravate those symptoms, the amount and side effects of medications, and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p. A failure to follow prescribed treatment may constitute sufficient evidence to support a conclusion that a claimant is not credible in describing symptoms about pain, and form the basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th Cir. 2007).

The ALJ found Petitioner's impairments could reasonably be expected to cause some of her alleged symptoms, but that her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely credible because the objective medical evidence, as well as Petitioner's own statements, contradicted Petitioner's allegations of disabling pain. (AR 26 – 27.) The discussion below summarizes the ALJ's findings in this regard, as the ALJ noted the inconsistencies between Petitioner's self-reports and the lack of findings upon examination by her medical providers.

Petitioner asserted she was bedridden an average of two days per week, due to severe pain, and that she was unable to walk more than a block two times per week and could not get up off the floor after doing her exercises. (AR 26.) However, the ALJ noted that, at an office visit to her medical provider on November 16, 2011, Petitioner reported looking for work, that she felt she could work as a convenience store clerk, and also that

**MEMORANDUM DECISION AND ORDER - 11**

she was exercising by walking a half mile each day. (AR 27, 28, 304.)

Petitioner complained of daily headaches, resulting in blackouts, nausea, blurred vision, fuzziness, and shaking. (AR 27, 260-262.) The ALJ noted however, Petitioner had not gone to the emergency room for her headaches in the twelve months prior to October 3, 2013. (AR 27.) At an office visit on August 15, 2011, Petitioner reported increased headaches as she was weaning off of methadone. Dr. Black was of the opinion Petitioner's headaches were made worse by methadone withdrawal, and noted only mild distress. (AR 314 – 318.) Petitioner was seen for her headaches on September 14, 2011, and at that time was complaining of severe, constant headaches, with pain greater than 10. But upon examination, she presented in no acute distress, and she reported she was driving the day before. (AR 28, 307 – 313.)

The ALJ discussed next Petitioner's continued pain management treatment throughout 2012 and 2013, noting that, although Petitioner frequently complained of extreme pain, her examinations were mostly normal; the medical treatment records, including notes, documented normal gait, with the exception of cervical spine imaging in November of 2012 showing moderate to severe spondylitic changes. (AR 28.) With regard to her complaints of low back pain during this period, she complained of a pain level of 10 out of 10, but MRI results dated May 31, 2013, were inconsistent with this level of pain; the images instead showed mild disc bulging, and only possible contact with the L4 nerve root. (AR 373 – 74; 410.) The ALJ noted that examination findings from May 22, 2013, just prior to the MRI, indicated normal reflexes, negative straight-leg

raise on the left, and full lower extremity strength. (AR 411 – 413.) In December of 2013, examination notes revealed normal lower extremity strength and gait, and poor effort on her strength exam. (AR 29, 573.)

Throughout 2014, as the ALJ noted, Petitioner had mostly normal physical examinations despite complaints of extreme pain. (AR 29.) To address her neck pain, cervical spine surgery was scheduled for April of 2014. Post-operative exams show she was healing well, and by November of 2014, she was released from care, and instructed to follow up with pain management care. (AR 30, 601.)

The ALJ discussed Petitioner's treatment history throughout 2015, which again was fairly unremarkable, including a benign cervical MRI; normal nerve conduction study of her upper extremities; full strength in all extremities; normal coordination; normal gait; and limited neck range of motion. (AR 30.) By July 8, 2015, Petitioner had ceased using methadone, her cervical and lumbar MRIs showed no neural foraminal or central canal stenosis, and she reported improved functioning along with increased activity (AR 30, 720, 722, 724).

And finally, the ALJ discussed the medical source statement submitted by Dr. Jutzy in July of 2014, as well as the state agency physician opinions. (AR 30.) Dr. Jutzy had been treating Petitioner since December of 2013 for her cervical spine condition. In his opinion, Petitioner's prognosis was excellent. Dr. Jutzy indicated Petitioner could sit, stand, and walk without limitation. (AR 588 – 590.) The ALJ relied also upon the findings of the state agency physicians, whose opinions Petitioner did not contest. (AR

30.) According to the state agency physicians, Petitioner had some functional limitations supported by the objective medical evidence, but could perform work activities with some restrictions. (AR 30, 72 – 96, 99 – 130.)

Petitioner argues the ALJ simply provided a laundry list, without adequately providing reasons for rejecting Petitioner's credibility, citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (explaining the ALJ must set forth his own interpretations and explain why they, rather than the doctors' opinions, are correct). However, as noted by the Court above, the ALJ adequately set forth the medical record evidence contradicting Petitioner's self-reports of excruciating, disabling pain. He recounted all of the instances where Petitioner reported pain at a level 10, but her examinations belied such assertions. After her neck surgery, the ALJ noted Petitioner's prognosis was excellent, and cited to the evidence of record in support of this conclusion. The ALJ discussed also Petitioner's complaints of back and hip pain contrasted with relatively normal findings upon examination. Contrary to Petitioner's assertion, the ALJ did not simply make conclusory statements. Rather, the ALJ noted the instances in the medical records, including Petitioner's own statements and the objective findings upon examination, which contradicted Petitioner's complaints concerning the intensity and limiting effects of her pain.

The Court finds the ALJ's credibility finding is supported by substantial evidence in the record. Accordingly, the Court finds no error.

### 3. Petitioner's Residual Functional Capacity

For the testimony of a vocational expert to be considered reliable, the hypothetical posed must include "all of the claimant's functional limitations, both physical and mental" supported by the record. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir.1995)). Petitioner argues the ALJ failed to include all of her functional limitations in the RFC posed to the vocational expert.

Specifically, Petitioner argues the ALJ erred because she contends her complaints about her symptoms are supported by the objective medical evidence. For instance, Petitioner asserts that Dr. Orme's evaluation supports Petitioner's claims of debilitating loss of function in her upper extremities. However, Petitioner's arguments are no more than a disagreement with the ALJ's credibility finding, and his assessment of the medical evidence in the record. The Court addressed the ALJ's credibility determination, above, finding it to be supported by substantial evidence in the record.

Next, Petitioner takes issue with the ALJ's reliance upon the state agency medical sources, arguing that the state agency physicians did not have the entre record to review, as the most recent opinion was dated in 2014. However, the ALJ had all of Petitioner's medical records, including those from 2015, and the ALJ incorporated a discussion of Petitioner's treatment history during 2015. Second, Petitioner argues her cervical spine surgery did not provide relief. Yet, the ALJ noted later records from 2015 indicated Petitioner had improved, as discussed above. (AR 30, 720, 722, 724.)

**MEMORANDUM DECISION AND ORDER - 15**

Finally, Petitioner relies upon a physical RFC assessment submitted by Dr. Holland in December of 2015 to the Appeals Council. The RFC assessment, however, was based upon treatment Dr. Holland provided from November 16, 2015, through January 29, 2016. The Appeals Council reviewed the additional treatment records and Dr. Holland's RFC assessment, and noted the ALJ decided the matter through October 14, 2015. Therefore, the new information was not incorporated, because it related to a later time. (AR 2.) *See* 20 C.F.R. § 404.970(b) (requiring new evidence to relate to the period on or before the date of the hearing decision). Accordingly, Dr. Holland's RFC assessment is not properly part of this Administrative Record, and not before the Court.

The Court therefore finds the ALJ's hypothetical to the vocational expert, which formed the basis for his RFC determination, was supported by substantial evidence and was not the product of legal error.

## CONCLUSION

The Court concludes the ALJ did not err in his credibility determination, and that his RFC determination was supported by substantial evidence in the record as a whole. Accordingly, the Court will affirm the Commissioner's decision.

DATED: December 22, 2017

Honorable Candy W. Dale
United States Magistrate Judge